O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| HOWARD D. JORGENSON, | ) | NO. CV 11-02407-MAN |
| | ) | |
|         Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
|    v. | ) | |
| | ) | AND ORDER |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
|        Defendant. | ) | |
| _____ | ) | |

     Plaintiff filed a Complaint on April 1, 2011, seeking review of the
denial of plaintiff's application for a period of disability and
disability insurance benefits ("DIB").  On April 27, 2011, the parties
consented, pursuant to 28 U.S.C. § 636(c), to proceed before the
undersigned United States Magistrate Judge.  The parties filed a Joint
Stipulation on December 5, 2011, in which:  plaintiff seeks an order
reversing the Commissioner's decision and remanding this case for the
payment of benefits or, alternatively, for further administrative
proceedings; and the Commissioner requests that his decision be affirmed
or, alternatively, remanded for further administrative proceedings.  The
Court has taken the parties' Joint Stipulation under submission without

1    oral argument.

2

3                    **SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

4

5        On March 10, 2008, plaintiff protectively filed an application for

6    a period of disability and DIB. (Administrative Record ("A.R.") 21.)

7    Plaintiff, who was born on November 25, 1957 (A.R. 25),[1] claims to have

8    been disabled since March 4, 2000, due to pain in his "shoulders, hip

9    and legs" (A.R. 21).  Plaintiff has no past relevant work experience.[2]

10   (A.R. 25.)

11

12       After the Commissioner denied plaintiff's claim initially and upon

13   reconsideration (A.R. 21, 61-66, 68-74), plaintiff requested a hearing

14   (*see* A.R. 77-83).  On May 5, 2009, plaintiff, who was represented by

15   counsel, appeared and testified at a hearing before Administrative Law

16   Judge Jeffrey A. Hatfield (the "ALJ").  (A.R. 21, 28-57.)  Plaintiff's

17   mother Sharon Jorgenson and vocational expert Sydney Mathilde also

18   testified.  (*Id.*)  On September 9, 2009, the ALJ denied plaintiff's

19   claim (A.R. 21-27), and the Appeals Council subsequently denied

20   plaintiff's request for review of the ALJ's decision (A.R. 1-3).  That

21   decision is now at issue in this action.

22

23

24   _____

25       [1]    On the date last insured, plaintiff was 47 years old, which is
     defined as a younger individual. (A.R. 25; *citing* 20 C.F.R. §
26   404.1563.)  Plaintiff is now in the closely approaching advanced age
     category.  (*Id.*)

27       [2]    Although the ALJ found that plaintiff has no past relevant
     work experience, it does appear that plaintiff has prior work experience
28   as a tow truck driver. (*See, e.g.,* A.R. 35, 44-45.)

                                        2

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that plaintiff last met the insured status requirements of the Social Security Act on December 31, 2004. (A.R. 23.) The ALJ also found that plaintiff did not engage in substantial gainful activity from March 4, 2000, his alleged onset date, through December 31, 2004, his date last insured. (*Id.*) The ALJ determined that plaintiff has the severe impairments of "status post bilateral lower extremity crush injury and left shoulder tendonitis." (*Id.*) The ALJ also determined that plaintiff does not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (A.R. 24.)

After reviewing the record, the ALJ determined that, through the date last insured, plaintiff had the residual functional capacity ("RFC") to:

> lift and carry 20 pounds occasionally and 10 pounds frequently, stand/walk 4 hours in an 8-hour workday, sit 6 hours in an 8-hour workday with need to alternate sitting and standing every 30 minutes to relieve discomfort, occasional ramp/stair climbing, no ladder/rope/scaffold climbing, occasional balance, stoop, kneel, and crouch, no crawling, and avoidance of concentrated exposure to unprotected heights and dangerous machinery.

(A.R. 24.)

3

1   Based on this RFC assessment, as well as plaintiff's age,
2   education,[3] work experience, and the testimony of the vocational expert,
3   the ALJ found that, through the date last insured, "there were jobs that
4   existed in significant numbers in the national economy that [plaintiff]
5   could have performed," including assembler, table worker, and film touch
6   up inspector. (A.R. 26.) Accordingly, the ALJ concluded that plaintiff
7   "was not under a disability . . . at any time from March 4, 2000, the
8   alleged onset date, through December 31, 2004, the date last insured."
9   (A.R. 26.)

10

11                          **STANDARD OF REVIEW**

12

13   Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's
14   decision to determine whether it is free from legal error and supported
15   by substantial evidence in the record as a whole. Orn v. Astrue, 495
16   F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant
17   evidence as a reasonable mind might accept as adequate to support a
18   conclusion.'" *Id.* (citation omitted). The "evidence must be more than
19   a mere scintilla but not necessarily a preponderance." Connett v.
20   Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the
21   record can constitute substantial evidence, only those 'reasonably drawn
22   from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063,
23   1066 (9th Cir. 2006)(citation omitted).

24

25   Although this Court cannot substitute its discretion for that of
26   the Commissioner, the Court nonetheless must review the record as a

27   _____
28        [3]   The ALJ found that plaintiff has a limited education and is
     able to communicate in English. (A.R. 25.)

                                    4

whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Sec'y of Health and Hum. Servs.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." <u>Orn</u>, 495 F.3d at 630; *see also* <u>Connett</u>, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* <u>Burch</u>, 400 F.3d at 679.

**DISCUSSION**

Plaintiff claims that the ALJ did not properly:  (1) consider the testimony of plaintiff;  (2) consider the lay witness testimony of plaintiff's mother, Sharon Jorgenson; and (3) assess plaintiff's RFC in view of plaintiff's severe impairment of left shoulder tendonitis. (Joint Stipulation ("Joint Stip.") at 4-12, 16-23, 27.)

5

**I.  The ALJ Gave Clear And Convincing Reasons For Rejecting Plaintiff's Testimony.**

Once a disability claimant produces objective medical evidence of an underlying impairment that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); *see also* 20 C.F.R. § 404.1529(a) (explaining how pain and other symptoms are evaluated).  "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."  Robbins v. SSA, 466 F.3d 880, 883 (9th Cir. 2006).  The factors to be considered in weighing a claimant's credibility include:  (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  *See* Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. § 404.1529(c).

The ALJ found that plaintiff has the severe impairments of "status post bilateral lower extremity crush injury and left shoulder tendonitis."  (A.R. 23.)  The ALJ further found that while "[plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms[,] . . . [plaintiff]'s statements

6

concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." (A.R. 25.) Because the ALJ cited no evidence of malingering, the ALJ was required to provide clear and convincing reasons for rejecting plaintiff's subjective allegations of pain and functional limitations.

In rejecting plaintiff's testimony, the ALJ stated the following:

> [T]he only medical records for the period from the alleged onset date of March 4, 2000 through the date last insured of December 31, 2004 are of two emergency room visits in February 2004. There is no evidence of regular and ongoing treatment during that period. There is no evidence that [plaintiff] required use of a wheelchair or other assistive device during the period at issue.

(A.R. 25.)

Contrary to plaintiff's contention, the ALJ's reasons for rejecting plaintiff's testimony are clear and convincing. First, the ALJ properly notes that, during the period at issue, there is no evidence of regular and ongoing treatment, and there are only two emergency room records. *See* Orn, 495 F.3d at 638 (noting that "[o]ur case law is clear that if a claimant complains about disabling pain but fails to seek treatment, . . . an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated"). Second, the ALJ properly considered the lack of objective evidence to support plaintiff's alleged use of a

7

1   wheelchair or other assistive device during the period at issue. *See,*
2   *e.g.,* Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)(noting that
3   "[a]lthough lack of medical evidence cannot form the sole basis for
4   discounting pain testimony, it is a factor that the ALJ can consider in
5   his credibility analysis"). Accordingly, because the ALJ provided clear
6   and convincing reasons for finding plaintiff's testimony to be not
7   credible, no reversible error was committed.

8
9        **II.  The ALJ Committed No Reversible Error In Considering The**
10            **Lay Witness Testimony Of Sharon Jorgenson.**
11
12       In evaluating the credibility of a claimant's assertions of
13   functional limitations, the ALJ must consider lay witnesses' reported
14   observations of the claimant. Stout, 454 F.3d at 1053. "[F]riends and
15   family members in a position to observe a claimant's symptoms and daily
16   activities are competent to testify as to [the claimant's] condition."
17   Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993); 20 C.F.R. §
18   404.1513(d) ("[W]e may also use evidence from other sources to show the
19   severity of your impairment(s). . . .  Other sources include, but are
20   not limited to . . . spouses, parents and other caregivers, siblings,
21   other relatives, friends, neighbors, and clergy."). "If an ALJ
22   disregards the testimony of a lay witness, the ALJ must provide reasons
23   'that are germane to each witness.'" Bruce v. Astrue, 557 F.3d 1113,
24   1115 (9th Cir. 2009)(citation omitted). Additionally, "the reasons
25   'germane to each witness' must be specific." Stout, 454 F.3d at 1054.
26   Lastly, where the ALJ's error lies in a failure to properly discuss
27   competent lay testimony favorable to the claimant, a reviewing court may
28   find such error harmless if the lay witness testimony is

8

"'inconsequential to the ultimate nondisability determination.'" Molina v. Astrue, __ F.3d __, 2012 U.S. App. LEXIS 6570, at *26, *45-*46 (9th Cir. April 2, 2012)(*citing* Carmickle v. Comm'r SSA, 553 F.3d 1155, 1162 (9th Cir. 2008)).

As noted in the ALJ's decision, at the May 5, 2009 administrative hearing, plaintiff's mother, Sharon Jorgenson, testified that:   "she lives with [plaintiff,] and she helps with the wheelchair"; and plaintiff "lies down a lot and uses leg braces." (A.R. 25.)   In considering Ms. Jorgenson's testimony, the ALJ referenced his reason for rejecting plaintiff's testimony and similarly rejected Ms. Jorgenson's testimony, because "there [wa]s no evidence that [plaintiff] required use of a wheelchair or other assistive device during the period from March 4, 2000 through December 31, 2004." (A.R. 25.)   In other words, the ALJ rejected the testimony of Ms. Jorgenson, because it was not supported by the medical record.

It is unclear under Ninth Circuit case law whether an ALJ may summarily reject lay testimony, because it is not supported by objective medical findings.   Specifically, one strand of cases in the Ninth Circuit suggests that such a finding by the ALJ constitutes a sufficient reason.   *See, e.g.,* Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence"); *see also* Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005)("An ALJ need only give germane reasons for discrediting the testimony of lay witnesses.   Inconsistency with medical evidence is one such reason.").   Another line of cases suggests that it is not.   *See, e.g.,* Bruce, 557 F.3d at 1116 ("Nor under our law

could the ALJ discredit her lay testimony as not supported by medical evidence in the record.")(*citing* <u>Smolen v. Chater</u>, 80 F.3d 1273, 1289 (9th Cir. 1996)).

Assuming *arguendo* that the ALJ committed error in rejecting the lay testimony of Ms. Jorgenson, such error was harmless.  As discussed *supra*, the ALJ properly discredited plaintiff's testimony -- testimony which was substantially similar to that of Ms. Jorgenson -- not only because it was not supported by the medical record but also because plaintiff failed to seek regular and ongoing treatment despite his allegedly disabling impairments.  Accordingly, as in <u>Molina v. Astrue</u>, because Ms. Jorgenson's testimony regarding plaintiff's limitations was similar to plaintiff's own testimony, and because the ALJ provided clear and convincing reasons for discounting plaintiff's testimony, the ALJ likewise provided sufficient reasons for rejecting Ms. Jorgenson's testimony.  2012 U.S. App. LEXIS 6570, at *46 (finding the "ALJ's failure to give specific witness-by-witness reasons for rejecting the lay witness testimony" to be harmless, "[b]ecause the ALJ had validly rejected all the limitations described by the lay witnesses in discussing [the claimant's] testimony"); *see also,* <u>Valentine v. Comm'r SSA</u>, 574 F.3d 685, 694 (9th Cir. 2009)(holding that because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony")).  As such, there is no reversible error.

///

///

**III.  The ALJ Committed No Reversible Error In Assessing Plaintiff's RFC.**

Plaintiff contends that the ALJ did not assess his RFC properly in view of his severe impairment of left shoulder tendonitis. (Joint Stip. at 5-13, 16.)  Specifically, plaintiff claims that the ALJ committed legal error, because despite "find[ing] the presence of a severe upper extremity impairment[,] . . . [the ALJ ] fail[ed] to impose any limitations as a result of that severe impairment in [his RFC] assessment." (*Id.* at 5.)

As discussed above, at step two, the ALJ found that plaintiff has the severe impairments of "status post bilateral lower extremity crush injury and left shoulder tendonitis." (A.R. 23.)  In determining plaintiff's RFC, the ALJ summarized plaintiff's medical record during the period at issue.  In pertinent part, the ALJ noted, *inter alia*, that plaintiff had two emergency room visits between March 4, 2000, through his last insured date of December 31, 2004. (A.R. 24.)  With respect to the first emergency room record, dated February 7, 2004, the ALJ noted that plaintiff complained of "left shoulder pain status post accident a few months ago. . . . [and that] [x]-rays revealed mild degenerative changes without evidence of acute fracture or dislocation." (*Id.*)  Regarding the second emergency room record, dated February 27, 2004, the ALJ noted that plaintiff "complain[ed] of left shoulder and hand pain and swelling for three weeks.  [Plaintiff] was diagnosed with left shoulder sprain." (*Id.*)  Taking into account this evidence -- *to wit,* "the evidence from the period from March 4, 2000 through the date last insured of December 31, 2004, *as discussed above*" -- and "[plaintiff]'s

11

1   history of bilateral lower extremity injury[,]" the ALJ determined that

2   plaintiff has the RFC to, *inter alia*, "lift and carry 20 pounds

3   occasionally and 10 pounds frequently." (A.R. 25; emphasis added.)

4

5       As noted above, the ALJ specifically considered plaintiff's severe

6   impairment of left shoulder tendonitis in assessing plaintiff's RFC.

7   Contrary to plaintiff's contention, by limiting plaintiff to lifting no

8   more than 10 pounds frequently and 20 pounds occasionally -- *to wit*,

9   light work[4] -- the ALJ imposed limitations related to plaintiff's

10  impairment.    Indeed, as the Commissioner properly notes, beyond

11  complaining generally about pain in his shoulder, plaintiff does not

12  point to, and the record does not support, limitations greater than

13  those found by the ALJ. Moreover, the ALJ properly rejected plaintiff's

14  testimony to the extent it was inconsistent with the ALJ's RFC

15  assessment.[5]   Accordingly, the ALJ committed no reversible error in

16  assessing plaintiff's RFC.

17

18                               **CONCLUSION**

19

20      For the foregoing reasons, the Court finds that the Commissioner's

21  decision is supported by substantial evidence and is free from material

22
23      [4]    Pursuant to 20 C.F.R. § 404.1567(b), light work is defined as
    "lifting no more than 20 pounds at a time with frequent lifting or
    carrying of objects weighing up to 10 pounds."
24
25      [5]    Plaintiff cites the cases of Bray v. Comm'r of SSA, 554 F.3d
    1219 (9th Cir. 2009), and Hoopai v. Astrue, 499 F.3d 1071 (9th Cir.
26  2007), in support of his contention that the ALJ cannot find a severe
    impairment yet avoid including any limitations as a result of the severe
    impairment in assessing plaintiff's RFC.  (Joint Stip. at 9-12.)
27  However, as noted *supra*, the ALJ properly limited plaintiff to light
    work in view of his severe impairment of left shoulder tendonitis, and
28  thus, plaintiff's contention is unavailing.

1  legal error.  Neither reversal of the Commissioner's decision nor remand

2  is warranted.

3

4      Accordingly, IT IS ORDERED that Judgment shall be entered affirming

5  the decision of the Commissioner of the Social Security Administration.

6  IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of

7  this Memorandum Opinion and Order and the Judgment on counsel for

8  plaintiff and for defendant.

9

10     **LET JUDGMENT BE ENTERED ACCORDINGLY.**

11

12 DATED:  May 9, 2012

13

14                                        MARGARET A. NAGLE

15                            UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    13